## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

LAWANDA JOHNETTE WILEY,     )
                                             )
        Plaintiff,               )
                                             )
     vs.                      )     Case No. 4:17-cv-02017-TMP
                                             )
NANCY A. BERRYHILL, Acting     )
Commissioner of the Social Security     )
Administration,                   )
                                             )
        Defendant.            )

## MEMORANDUM OPINION

## I.    Introduction

The plaintiff, Lawanda Johnette Wiley, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner")[1] denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Wiley timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 16).

---

[1] It appears, from the briefs filed by the Government in other Social Security cases and from news reports, that there is neither a Commissioner nor an Acting Commissioner currently serving in the Administration, but that the functions of the job still are being performed by Nancy A. Berryhill.

The plaintiff was 48 years old on the date of the ALJ's opinion. (Tr. at 20, 102). Her past work experience includes employment as an auto assembler, a forklift operator, an office manager, and a shipping and receiving clerk. (Tr. at 45). The plaintiff claims that she became disabled on January 1, 2014, from right and left shoulder pain, seizure-like activity, and degenerative joint disease in the hips. (Tr. at 56-8).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. Id. If is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. Id. The decision depends on the medical evidence in the record. See Hart v. Finch, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or

equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, she will be found disabled without further consideration.  Id.  If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops.  Id.  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  Id.  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  Id.  The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; once that burden is met, the claimant must prove her inability to perform those jobs

in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that the plaintiff had not engaged in substantial gainful activity since her amended onset date of January 1, 2014.  (Tr. at 26).  According to the ALJ, the plaintiff has the following impairments that are considered "severe" based on the requirements set forth in the regulations: "status post left shoulder capsular labral reconstruction with left shoulder tendinopathy, bicipital tenosynovitis, mild degenerative joint disease, and adhesive capsulitis; possible degenerative joint disease of the lumbar spine and hips; arthritis; obesity; and hypertension."  Id.   He also found that the plaintiff's dyspepsia, overactive bladder, contusion, lumbar strain, ankle sprain, shoulder sprain, menopausal/postmenopausal symptoms, neuropathic leg pain, foot pain, frequent urination, syncope episodes, and depression were non-severe.  Id. at 32-4.  The ALJ found that the plaintiff's severe and non-severe impairments, separately and in combination, neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 35.  The ALJ found the plaintiff to have no limitation in activities of daily life, no limitation in social functioning, no limitation with regard to concentration, and no episodes of decompensation.  (Tr. at 57).  The ALJ determined that the plaintiff has the residual functional capacity to perform work at a sedentary level of exertion as

defined in 20 C.F.R. 404.1567(a) and 416.967(a). Id. at 37. The ALJ further elaborated:

> The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.2567(a) and 416.967(a) which allows her to sit for six hours out of eight hours, no upper extremity pushing or pulling, no overhead reaching, no climbing, no pushing or pulling with the lower extremities or foot controls, no unrestricted heights, no operation of hazardous machinery, no driving, and she can occasionally stoop and crouch.

(Tr. at 37)

According to the ALJ, the plaintiff is "capable of performing her past relevant work as an office manager as generally performed." Id. at 44. The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 1, 2014, through the date of this decision." Id. at 46.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. See Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.

See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. Id. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting Consolo v. Federal Mar. Comm'n, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. Miles, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. See Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative

findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.   Discussion

Ms. Wiley argues that the ALJ's decision was not supported by substantial evidence and should be remanded for three reasons. First, she contends that the ALJ's determination that she was able to perform her past work as an office manager is not supported by substantial evidence. Second, she argues that the decision to deny benefits was not supported by substantial evidence because the hypothetical posed to the vocational expert witness ("VE") did not account for the limitations found by Dr. Sathyan Iyer, a consultative physician appointed by the Commissioner. Third, she asserts that the ALJ should have found that shoulder and hip problems equaled Listing 1.02 for the major dysfunction of a joint. The government has responded. (Doc. 15).

1. Past Relevant Work

Step four of the sequential evaluation process requires the ALJ to determine if the claimant can perform any of her past relevant work. 20 CFR § 404.1520(f). Where a claimant is able to perform her past relevant work "either as the claimant actually performed it or as generally performed in the national economy," the claimant is not disabled. See id.; 20 CFR § 404.1560(b)(2). The disability claimant has the burden of demonstrating that she is unable to return to her past relevant work. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). This burden requires the plaintiff to prove that she is unable to "perform [her] past *kind* of work, not that [she is] unable to perform a specific job [she] held in the past." Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986) (emphasis in original). Its focus is on the general category of work, not the requirements of a specific job the claimant held. Therefore, the relevant inquiry before the ALJ at Step Four is whether the claimant can perform the demands of her prior occupation, rather than her prior job specifically. Id.

To answer this the ALJ is required to consider the duties of her past relevant work. Lucas v. Sullivan, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). The ALJ then compares the claimant's RFC with the functional demands of the past relevant work to determine whether the plaintiff can perform the work. 20 CFR § 404.1520(f). In making this determination, an ALJ may rely on either the

Dictionary of Occupational Titles or the testimony of a Vocational Expert.  Rivera-Cruzada v. Commissioner of Soc. Sec., 741 F. App'x 737, 739 (11th Cir. 2018) (citing Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1990) and Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  In essence, in a step four case, the ALJ is tasked with making a "finding of fact as to the individual's RFC…, as to the individual and mental demands of the past job/occupation…, [and] that the individual's RFC would permit a return to [her] past job or occupation." SSR 82-62, 1982 WL 31386 at *4.

In the instant case the ALJ made the required findings and properly relied on the testimony of the VE; therefore, the determination that the plaintiff was able to return to her past relevant work as an office manager is supported by substantial evidence. The ALJ found that the plaintiff had the RFC to perform work at the sedentary level of exertion.  (Tr. at 37).  Additionally, the ALJ developed the record as to the physical and mental demands of her previous work.  The record before the ALJ included the plaintiff's description of the demands of her job as an office manager.  (Tr. at 67).  At the hearing the plaintiff testified that she would sit for four out of the eight workday hours and that she carried supplies and other items that weighed 25-30 lbs.  Id.  In addition, the plaintiff completed a work history report in which she indicated that she was required to walk, stand, sit, kneel, crouch, handle, reach, and write for eight out of eight working hours.  (Tr. at

250).  She also stated that she lifted 20 pounds at the heaviest and lifted 10 pounds frequently, and she was a lead employee who supervised other employees and made hiring and firing decisions.  Id.  The ALJ complied with the mandate of SSR 82-62 to obtain "detailed information about strength, endurance, manipulative ability, mental demands, and other job requirements" from "the claimant, employer, or other informed source."  1982 WL 31386 at *3.

Finally, the ALJ relied on the testimony of the Vocational Expert that the plaintiff was able to perform her past relevant work.  The VE noted that the plaintiff did not have the RFC to perform the job as she actually performed it. However, he was able to explain the conflict between the way she performed the work and the work as it is defined in the Dictionary of Occupational Titles, and how the plaintiff was able to perform the work as it is *generally* performed.  The following exchange between the VE and the ALJ occurred at the hearing:

> Q What about her past relevant job as an Office Manager, what do you think?
>
> A Your Honor, that is classified as a sedentary position meaning that you're primarily in a seated position. It does require occasional standing there but not for any significant duration.  So in -- I would say in the vast majority of Office Manager positions she could perform the work.

(Tr. at 94).  Because the ALJ made the requisite findings, weighed the evidence, and properly relied on the VE testimony to find that the plaintiff was able to

perform her past relevant work as an office manager as it is normally performed, the court finds that the decision is supported by substantial evidence.

## 2. Reliance on VE Testimony

Though stated inartfully, Plaintiff is arguing that the ALJ erred by failing to include the limitations as stated by Dr. Iyer in the hypothetical question to the VE. However, plaintiff has not argued that it was improper for the ALJ to afford little weight to Dr. Iyer's opinion. (Docs. 14, 16). Therefore, plaintiff seemingly accepts the ALJ's assessment of Dr. Iyer's opinion as valid, but is arguing that those limitations should have been included in the hypothetical question anyway. This argument is without merit.

In order for the ALJ's reliance on the testimony of a VE to be supported by substantial evidence, the hypothetical posed to the VE must contain all of the claimant's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). However, the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1162 (11th Cir. 2004). Here ALJ found that Dr. Iyer's opinion was not entitled to significant weight because it was inconsistent with other medical evidence. (Tr. at 44). Plaintiff has not argued that the opinion was entitled to more weight, and therefore, has seemingly conceded that the ALJ properly found that the opinion was not entitled to more weight. Where an ALJ

declines to give weight do an opinion or finds that the claimant is not so limited, there would be no reason for the ALJ to include those opined limitations in the hypothetical question. The hypothetical need not include limitations that the ALJ finds the claimant does not have.

3. Listing 1.02

Plaintiff argues that the ALJ should have found that she meets Listing 1.02 for major dysfunction of a joint.  The determination of whether a claimant meets a listing occurs at step three of the sequential evaluation process. The burden of proving that she meets a Listing is on the claimant.  Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991).  In order to carry this burden, a claimant must show that she has a medical diagnosis included in the Listings, that she meets all of the specific criteria of the Listing, and that she meets the durational requirement. Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002).  The impairment must be "severe enough to prevent an individual from doing any gainful activity, regardless of [her] age, educations, or work experience" in order to meet or equal a listing.   20 CFR § 416.925.   In order to meet a Listing, the claimant must demonstrate the existence of an impairment or a combination of impairments that satisfies all of the listed criteria.  Id.

Listing 1.02 describes the major dysfunction of a joint. It specifically provides for the disability of an adult with joint dysfunction:

Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankyloses, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 CFR pt. 404, subpt. P, app. 1 § 1.02.

The ALJ evaluated the whether the plaintiff's condition met the requirements of Listing 1.02 and found that it did not. He found that she did not have "involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively" or "involvement of one major peripheral joint in each [or either] upper extremity resulting in inability to perform fine and gross movements effectively." (Tr. at 35-6).

Claimant asserts a disability onset date of January 1, 2014. She had a Functional Capacities Evaluation that was performed on January 13, 2014, during which it was noted that it was difficult to "get a good assessment due to resistance during passive movement and joint mobility testing" and that "patient did self-limit

during active ROM." Tr. at 385. The report notes that she "exhibited a normal gait pattern" and that the gait remained normal at "increased speeds or with fatigue." Id. at 390. Based upon the testing, Dr. Davis, her orthopedic physician, recommended a release to full work duty on January 21, 2014, because the evaluation was invalid due to plaintiff's self-limiting and there was "no anatomic reason why she would not be able to work full duty." (Tr. at 435).

On July 23, 2014, Plaintiff presented to the Emergency Room at Gadsden Regional Medical Center complaining of shoulder and back pain after she fell at Walmart. (Tr. at 480-507). The record shows that she was ambulatory without assistance and that her gait was stable. (Tr. at 501). She was diagnosed with a lumbar strain and a shoulder sprain and discharged.

On July 10, 2014, the Plaintiff went to Dr. Powell for an evaluation of her left shoulder. (Tr. at 509-10). Dr. Powell suggested and performed a pain relief injection into her left shoulder. Id. On August 11, 2014, Plaintiff underwent a left shoulder arthrogram that showed "[m]ild degenerative joint disease, limited associated rotator cuff tendinopathy, however with no suspicious tear." (Tr. at 479). After receiving these results, Dr. Powell recommended that the plaintiff start physical therapy. Id. at 514.

On October 4, 2014, Dr. Iyer performed a consultative examination. (Tr. at 521-26). Plaintiff was noted to be in "mild distress with back pain." Id. at 522.

She had difficulty standing and walked slowly and with a limp.  Id.  The muscle power of her upper and lower extremities was normal.  Id.  In conclusion, Dr. Iyer opined that plaintiff would "have significant impairment with use of upper extremities in activities such as lifting, carrying, pushing, pulling, and overhead activities."  Id. at 524.  Additionally, Dr. Iyer opined that the plaintiff would "have impairment of functions involving bending, lifting, squatting, climbing, and walking long distance.  Id.  Finally, Dr. Iyer thought the plaintiff was not limited in her ability to sit, handle, hear, or speak.  Id.

On October 30, 2014, the plaintiff was treated by Dr. Powell again. (Tr. at 599).  Dr. Powell believed that she had achieved maximal medical improvement and that no additional treatment was necessary.  Id.  She followed up again after she said that her symptoms returned on December 8, 2015.  (Tr. at 601).  Dr. Powell prescribed Voltaren gel and suggested additional physical therapy.  He did not think that a change to her MMI or impairment rating was warranted.  Id.  On July 16, 2015, Plaintiff was seen by Dr. Ahiabuike for bilateral foot pain.  Id. at 616-623.  Dr. Ahiabuike prescribed Neurontin and encouraged the plaintiff to exercise or engage in a routine walking program.  Id. at 623.

There is substantial evidence to support the ALJ's finding that the plaintiff does not meet or medically equal Listing 1.02.  The only medical opinion that suggests that the plaintiff has severe limitations is that of Dr. Iyer. However, the

ALJ afforded this opinion less weight because it was inconsistent with the opinions of two orthopedists, and the plaintiff has not challenged this finding. The opinions of the plaintiff's two treating orthopedists, Dr. Davis and Dr. Powell, indicate only minor limitation at most in the plaintiff's left shoulder. There is largely no medical support for any limitation in the plaintiff's lower body. Accordingly, the ALJ's opinion that Plaintiff does not meet Listing 1.02 is supported by substantial evidence

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Wiley's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law. A separate order will be entered.

DONE this 22nd day of March, 2019.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE